UNITED STATES DISTRICT COURT
EASTERN DIVISION OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

KATHI M. DUCKWALL-KENNADY,           )
ADMINISTRATRIX OF THE ESTATE         )
OF EDWARD EARL DUCKWALL,             )
JR.,                                 )   Civil Case No.
                                     )   5:13-cv-68-JMH
     Plaintiff,                      )
v.                                   )   **MEMORANDUM OPINION & ORDER**
                                     )
UNITED STATES OF AMERICA,            )
                                     )
     Defendant.                      )

                                         ***

This matter is before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction. [D.E. 10]. Plaintiff has responded [D.E. 11], and Defendant has replied [D.E. 12]. Thus, this matter is now ripe for review. For the reasons which follow, Defendant's motion to dismiss will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On or about May 1, 2008, Edward Earl Duckwall, Jr., Plaintiff's deceased husband, became a patient at the Thomson Hood Veterans Center ("THVC"), a facility owned and operated by the Kentucky Department of Veterans Affairs. [D.E. 1 at 4]; *see also Kentucky.gov*, THOMSON-HOOD VETERANS CENTER, http://www.thvc.ky.gov/about.htm (last visited July 10, 2013). According to Plaintiff, Mr. Duckwall suffered

from accelerated deterioration of his health, culminating in his death, because the physicians at THVC breached their duty of care in several respects. [D.E. 1 at 5–7].

While a patient at THVC, Mr. Duckwall was primarily under the care of Dr. Joy Scott. [D.E. 11 at 1]. Dr. Scott is employed by the Kentucky Department of Veterans Affairs at THVC, but also maintains "on call" telephonic hours with the United States Department of Veterans Affairs at the VA Nursing Home in Lexington, Kentucky. [D.E. 10 at 2–3]. Dr. Scott only provided on-call coverage to the VA Nursing Home on nights and weekends, and her job was to address issues such as medication changes and whether a resident of the VA Nursing Home should be referred to the emergency room. [D.E. 10 at 3]. The care that she provided to Mr. Duckwall, however, occurred entirely at THVC, as Dr. Scott never provided any treatment or care to Mr. Duckwall in connection with her on-call services to the U.S. Department of Veterans Affairs. [D.E. 11-1].

Following her husband's death, Plaintiff filed a complaint in this Court, asserting a claim under the Federal Tort Claims Act ("FTCA"), in addition to state law claims for negligent supervision and negligence per se. [D.E. 1].

**II.   STANDARD OF REVIEW**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint.  The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 570).

**III. ANALYSIS**

The FTCA waives governmental sovereign immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . .."  28 U.S.C. § 1346(b)(1). It thus follows that "district court jurisdiction over civil actions against the government for the acts or omissions of its employees is dependent on whether the particular employee is 'acting within the scope of his office or employment.'"  *Flechsig v. United States*, 991 F.2d 300, 302 (6th Cir. 1993) (citing § 1346(b)).  "Whether

3

an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). Therefore, because the alleged acts in the instant case occurred in Kentucky, Kentucky law regarding the scope of employment applies. *Flechsig*, 991 F.2d at 302.

"To determine whether a particular employee action is within the scope of employment, Kentucky courts consider the following: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expectable in view of the employee's duties." *Coleman v. United States*, 91 F.3d 820, 823—24 (6th Cir. 1996). Further, "Kentucky Supreme Court cases have clarified that whether the employer's purpose motivates the employee's action-an element *Coleman* instructed us to consider but did not make dispositive-controls our analysis." *Scottsdale Ins. Co. v. Sandler*, 381 F. App'x 554, 556 (6th Cir. 2010).

4

Utilizing these factors, it is clear that Dr. Scott was not acting within the scope of her employment with the federally-owned VA Nursing Home while providing care to Mr. Duckwall at the state-owned THVC. To the contrary, the facts as alleged by Plaintiff demonstrate that Dr. Scott's treatment of Mr. Duckwall occurred entirely within her capacity as a THVC physician at the THVC facility, as Mr. Duckwall was a THVC patient who never interacted with Dr. Scott—or any other physician for that matter—at the VA Nursing Home. Further, Dr. Scott was not hired at the VA Nursing Home to perform services at THVC, and, since the two jobs were entirely unconnected, her actions at THVC did not benefit the VA Nursing Home, nor were her actions at THVC motivated by the VA Nursing Home's purposes. Quite simply, Dr. Scott had two jobs that were completely independent of one another, and was only acting within the scope of her employment at THVC when the alleged events in this matter took place.

Plaintiff does not dispute that Mr. Duckwall received all of his care from Dr. Scott while he was a patient at THVC, and admits that Mr. Duckwall was never a patient of the VA Nursing Home. [D.E. 11 at 1]. However, Plaintiff argues that Dr. Scott was still acting within the scope of her employment at the VA Nursing Home while giving care to

5

Mr. Duckwall because Dr. Scott: 1) was employed by both THVC and the VA Nursing Home simultaneously; 2) performed similar duties in both positions; 3) furthered the United States' interests by working at THVC; and 4) was working at THVC under the loaned servant doctrine, thus making the United States liable for her actions at THVC. [D.E. 11 at 3–5]. These arguments are unavailing.

The fact that Dr. Scott performed medical services for Mr. Duckwall at THVC and also happened to provide similar services at a federal facility at the same time does not make the United States responsible for her actions at the state facility. Indeed, "all performance of medical services by a doctor employed to perform medical services is [not] necessarily conduct within the scope of employment," which is particularly, and obviously, the case where the doctor is performing services for an entirely different employer for an unaffiliated patient. *Davey v. St. John Health*, 297 Fed. App'x 466, 471 (6th Cir. 2008).

Moreover, Dr. Scott's care of Mr. Duckwall at THVC did not further the business of the VA Nursing Home. While it is true that, under Kentucky law, the "employee conduct in question need only be done *in part* to benefit the employer" to be considered conduct within the scope of employment, the mere fact that Dr. Scott specialized in the care of

6

veterans at both THVC and the VA Nursing Home is insufficient to conclude that her work at THVC benefitted the VA Nursing Home. *Coleman*, 91 F.3d at 825–26. Dr. Scott's choice to maintain two separate jobs independently of one another was a personal choice; she was not instructed by one entity to seek employment for the other, and had different functions at both facilities. *See McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 840 (W.D. Ky. 2007) (citing *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)), (holding that so long as an employee "acts from purely personal motives . . . which are in no way connected with the employer's interests, he is considered in the ordinary case to have departed from his employment, and the master is not liable.")

Finally, Defendant is correct that the loaned servant doctrine does not apply. Under the loaned servant doctrine, "[a] servant may be loaned or hired by his master for some special purpose so as to become, as to that service, the servant of the person to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master, the general or original master being correspondingly relieved." *Carnes v. Dep't. of Econ. Sec.*, 435 S.W.2d 758, 761 (Ky. App. 1968). The premise of this cause of action, however, is that the original employer

7

actually loans the employee to the special employer. This was clearly not the case here, as Dr. Scott independently sought employment from the VA Nursing Home. Further, her work for the VA Nursing Home did not require her to abandon her work at THVC. *See Nazar v. Branham*, 291 S.W.3d 599, 607 (Ky. 2009) ("In borrowed servant cases, agency for one party is only destroyed by agency for another if the fulfillment of one role requires the abandonment of the other.").

Frankly, there is absolutely no rational support for Plaintiff's assertion that Dr. Scott acted within the scope of her employment at the VA Nursing Home while providing care to Mr. Duckwall, and Plaintiff's claim under the FTCA must be dismissed accordingly for lack of subject-matter jurisdiction. Further, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("When all federal claims are dismissed before the trial, the balance of consideration usually will point to dismissing the state law claims. . ..").

**IV. CONCLUSION**

For the reasons stated above, **IT IS ORDERED**:

8

1) that Defendant's motion to dismiss Plaintiff's claim is **GRANTED** [D.E. 10];

2) that Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE.**

This the 10th day of July, 2013.



Signed By:
<u>Joseph M. Hood</u>
Senior U.S. District Judge